233 So.2d 278 (1970)
Parey P. BRANTON et al.
v.
Honorable Mary Evelyn PARKER, Treasurer, State of Louisiana.
No. 8027.
Court of Appeal of Louisiana, First Circuit.
March 9, 1970.
Rehearing Denied April 13, 1970.
*281 Richard C. Cadwallader, Jonathan C. Harris, Baton Rouge, for appellants.
Jack P. F. Gremillion, Atty. Gen., Victor A. Sachse, Jr., Sp. Asst. Atty. Gen., and Frank P. Simoneaux, Special Asst. Atty. Gen., Baton Rouge, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiffs, four in number, all members of the Louisiana Legislature, appeal dismissal of their action instituted as citizens, registered voters and taxpayers of the state, to permanently enjoin defendant, Honorable Mary Evelyn Parker, Treasurer, State of Louisiana (Treasurer), from disbursing state funds in payment of expense allowances to members of the state legislature and salary increases granted certain state officials pursuant to Act 11 of the Regular (Fiscal) Session of the Louisiana Legislature for the year 1969. Petitions of intervention align the Honorable Lloyd R. Himel, Member, House of Representatives, Louisiana Legislature, Victor Bussie, individually, and the Louisiana AFL-CIO, an unincorporated association, appearing through its President, Victor Bussie, with the Treasurer in resisting plaintiffs' demands.
In essence Section 7 of Act 11 provides an allowance of $6,000.00 annually to the members of the legislature for office and other expenses, in addition to the per diem and all other allowances provided by law. It also provides an additional $6,000.00 annual expense allowance to the Speaker of the House. Additionally, the Secretary of the Senate and Clerk of the House of Representatives are granted expense allowances of $500.00 monthly for attending to the business of the two chambers between sessions. The funds thus provided are made withdrawable from the General Fund upon the warrants of the presiding officer of each house, in the case of members of the legislature. The Clerk of the House and the Secretary of the Senate are authorized to draw their funds from the State Treasury upon their own warrants. Sections 1 through 6, inclusive, increase the salaries of the Governor, Lieutenant Governor, Commissioner of Agriculture, State Superintendent of Education, State Custodian of Voting Machines, Commissioner of Insurance, Registrar of the State Land Office, Secretary of State, Attorney General, State Comptroller and State Treasurer. Section 6 also provides that after July 1, 1969, the Attorney General shall not engage in the private practice of law during his tenure of office. Section 8 stipulates that the additional salaries provided for the named officials shall be payable monthly on their own warrants drawn on the General Fund of the State. A severability clause is provided in Section 9. The act does not expessly appropriate funds for the mentioned purposes.
The legislation is challenged as being unconstitutional for numerous reasons basically involving (1) the authority of the legislature to increase its own compensation by simple legislative act; (2) legislative procedural rules allegedly contravening constitutional provisions; (3) failure to observe constitutional mandates governing the form and content of legislation, and (4) constitutional requirements controlling appropriation and expenditure of public funds.
There is no dispute concerning the pertinent facts. Only questions of constitutional law are at issue. Act 11 was introduced in the House of Representatives, as H. B. 264, on May 21, 1969, during the Regular (Fiscal) Session of the Legislature. Initially it provided salary increases for the above mentioned officials but did not include the members of the legislature, the Speaker of the House, the Clerk of the House or the Secretary of the Senate. Neither did it prohibit the Attorney General from the private practice of law. The bill was read by title on May 21, 1969 and referred to the Committee on Affairs of the House. The committee reported the matter *282 fiscal without obtaining a ¾ vote required by Article 3, Section 8, of the State Constitution to permit consideration of a nonfiscal matter at a fiscal session. Following favorable committee report, the bill was read by title and ordered engrossed and passed to third reading. On June 4, 1969, a floor amendment, adopted by a vote of 63 yeas to 29 nays, added Section 7, providing an expense allowance for members of the Legislature, the Speaker of the House, the Clerk of the House and the Secretary of the Senate. Further amendment enlarged the salary increase to the State Treasurer. Upon final passage, the measure received a vote of 52 yeas and 38 nays. The Speaker of the House declared the bill had failed to pass because of Article 3, Section 34 of the State Constitution required a two-thirds vote of each legislative house to enact salary increases for public officials. On June 5, 1969, a motion to reconsider H. B. 264 was made pursuant to House rules, and an amendment was adopted prohibiting the Attorney General from private law practice. On motion for final passage, the amended bill received a vote of 51 yeas and 29 nays, whereupon the Speaker declared the bill failed to pass. The House Journal for June 4, 1969, notes the bill's failure to pass and recites "Motion to reconsider pending". The House Journal for June 5, 1969 shows the measure was reconsidered and returned to the calendar under the rules. Later, on June 5, 1969, Section 7 was amended and on a motion for final passage the bill received 54 yeas and 22 nays and was declared adopted.
Meanwhile, two measures, namely, House Bills 11 and 232, both substantially the same as Section 7 of House Bill 264, in that they proposed an expense allowance for the members of the Legislature, the Speaker of the House, the Clerk of the House, and the Secretary of the Senate, were rejected. On June 3, H. B. 232 was defeated by a vote of 38 yeas to 54 nays; on June 5, H. B. 11 was defeated by a vote of 39 yeas to 50 nays.
On June 5, 1969, House Bill 264 went to the Senate where it was read by title, referred to the Committee on Finance and favorably reported by the committee the following day. A floor amendment adopted June 9 by a vote of 18 yeas to 17 nays, deleted the expense allowance provided for legislators, the Clerk of the House, and the Secretary of the Senate. On motion for final passage, House Bill 264 (the legislative expense provision deleted) received an approving vote of 24 yeas to 11 nays and was declared adopted June 9, 1969, the day before adjournment sine die. The bill was returned to the Senate calendar.
On the session's final day, June 10, 1969, the House, by a vote of 74 yeas to 20 nays, rejected all Senate amendments. The Speaker appointed four House members to a Conference Committee to confer with a like committee from the Senate concerning the Senate and House differences respecting H. B. 264. A similar committee of three Senators was appointed by the Lieutenant Governor. The Conference Committee recommended the bill be amended to: (1) reinstate Section 7 deleted by the Senate; (2) delete a provision which prohibited payment of the legislative expense allowance when the legislature was in session; (3) grant an increase of $6,000.00 to the Speaker in addition to the $6,000.00 expense allowance accorded as a member of the legislature, and (4) add a provision authorizing the constitutional officers affected to withdraw the additional salary granted from the General Fund of the State on their own warrants. The conference committee report was adopted by the House by a vote of 56 yeas and 38 nays. The Senate, on June 10, 1969, also received the Conference Committee report which it adopted by a vote of 21 yeas and 15 nays. House Bill 264 was signed by the Speaker of the House and the Lieutenant Governor on June 10, 1969.
Discussion of the constitutionality of any legislation must perforce consider the general principle that constitutionality *283 of legislation is presumed until the contrary be shown. Interstate Oil Pipe Line Co. v. Guilbeau, 217 La. 160, 46 So.2d 113. He who alleges unconstitutionality of an act bears the burden of proof. Conway v. Lane Cotton Mills Co., 178 La. 626, 152 So. 312. The validity of acts is to be upheld if at all possible; all doubt is to be resolved in favor of legality and unconstitutionality will be decreed only when no other reasonable alternative presents itself. Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 177 So.2d 576.
It is contended Act 11 is invalid because compensation of legislators can be lawfully increased only by amendment to Article III, Section 14, of the State Constitution which reads:
"Members of the Legislature shall receive a compensation of ten ($10.00) dollars per day during their attendance on that body, and ten (10) cents per mile going to and returning from the seat of government, not to exceed three round trips."
Alternatively, it is contended that if an increase in legislative compensation may be made by simple legislative act, such increase can be effective only with respect to legislators elected at the next ensuing election.
Provisions of prior constitutions, similar to present Article III, Section 14, are worthy of note in disposing of the foregoing issue. Article II, Section 19, Constitution of 1812, provided a legislative per diem of $4.00 daily which could be increased or decreased by law, but no change therein could be effective during the term of office of the members by whom a change was made. Comparable provisions, with no significant change, were incorporated in the Constitutions of 1845, 1852, and 1864.
Article 27 of the Constitution of 1879 provided:
"The members of the General Assembly shall receive a compensation not to exceed four dollars per day during their attendance, and their actual traveling expenses going to and returning from the seat of government; but in no instance shall more than thirty dollars each way be allowed for traveling expenses."
It is readily apparent the above provision was intended to provide maximum compensation for legislators. This conclusion appears reasonable in view of the express phrase "not to exceed four dollars per day" and that "in no instance shall more than thirty dollars each way be allowed for traveling expenses."
Our Constitutions of 1898 and 1913 both provided for compensation not to exceed $5.00 per day during attendance and 5¢ per mile going to and returning from the seat of government. Here again, a maximum was clearly indicated.
Present Article III, Section 14, contains no language to indicate the $10.00 per diem provided for shall not be exceeded. Neither does it prohibit increases from taking effect during the tenure of those lawmakers by whom the increase is voted. Neither is the present provision intended as exclusive compensation for legislators. The sums provided for legislators pursuant to Act 11 are not salary; the act expressly states that "In addition to the per diem and all other allowances provided by law for members of the legislature * * * each member shall be paid an expense allowance for office expense, secretarial help, automobile, and other travel expenses, telephone and telegraph service and any other expenses * * *." Insofar as legislators are concerned, the payments are not salary. They are expense allowances purely. Since these allowances are not salary, the two-thirds rule governing increase in salaries of public officials, as provided in Article III, Section 34, is without application. Appellants also claim the provision "not to exceed three round trips" contained in Article III, Section 14, above, indicates intent to limit all legislative compensation to the amounts provided therein. We find *284 it significant, however, that the limitation noted is restricted solely to the mileage factor. Appellants cite opinions of the Attorney General to the effect that compensation of members of the legislature may be increased only by Constitutional amendment. Opinions of the Attorney General are not law; they are not controlling on the Courts; at most they are persuasive. State ex rel. Saint v. Toups, La.App., 95 So.2d 55.
Constitutional Article III, Section 29, is said to render Act 11 invalid in that it prohibits members of the legislature from voting on matters in which they have a private or personal interest. To hold that this provision applies to compensation of public officials, including the legislators themselves, which the legislature is authorized to determine pursuant to Constitution Article III, Section 34, would nullify the effect of the latter provision. Article III, Section 29, comprehends private and personal business interests and affairs, as such, not the compensation of legislators in their official capacities. We find the provision in question inapplicable herein.
Appellants complain that Act 11 contravenes Constitutional Article III, Section 16, which recites that a statute can embrace but one object and shall have a title clearly indicative thereof. Alternatively, it is contended that if Act 11 is an appropriation measure, it violates Article IV, Section 9, of the Constitution which provides that appropriations, other than those contained in the general appropriation bill, shall be made by separate bills, each embracing but one object. We find no merit in either contention as hereinafter shown. Numerous authorities are cited by appellants in which legislation has been stricken with nullity for violation of this particular constitutional mandate. It is not contended Act 11 does not properly indicate its content. It is argued that it embraces more than one object. Counsel for appellants properly observes that the evils to be thus avoided are the passage of misleading legislation. In addition, the prohibition insures against the practice of bringing together, in one piece of legislation, unrelated matters with the view of obtaining favorable consideration for the whole in situations where each object, standing upon its own merits, could not obtain approval. Appellants concede, however, the mere combining of salary raises for two or more officers or officials does not per se violate the one object prohibition. It is contended that since the act combines "expense allowances" with salary raises for three classes of persons, namely, legislators, public officials and an officer of the House of Representatives, and also contains a ban against the private practice of law by the State Attorney General, it embraces more than one object.
It is settled in our jurisprudence that the constitutional provision requiring that legislation have but one object and a title clearly indicative thereof, must be broadly construed with the view of effectuating rather than frustrating legislative purpose. Jackson v. Hart, 192 La. 1068, 190 So. 220; Associated General Contractors of America v. Police Jury of Pointe Coupee Parish, La.App., 225 So.2d 300. It is chiefly contended the provision prohibiting the Attorney General from practicing law embraces a separate and distinct object thereby nullifying the act in its entirety.
On prior occasions salaries of two or more officers representing different branches of government have been increased in a single act. For example, Act 60 of 1950 increased the salary of certain members of executive, judicial and administrative officials; Act 30 of 1952 increased salaries of the Chief Executive and Judges of the Supreme Court and the Courts of Appeal; Act 397 of 1952 increased salaries of several state administrative officers; Act 61 of 1965 increased salaries of all state executive officers except the Governor.
Article III, Section 16 of the Constitution does not require that the title of an act constitute an index to its contents. *285 Neither does it require that every detail necessary to the accomplishment of its general object be set out in detail. It suffices that the one general object be fairly stated in general terms. All things necessary or proper to carry out the general object stated in the title are deemed to be within the scope of the title. Wall v. Close, 203 La. 345, 14 So.2d 19; Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49. We find the provision against the Attorney General engaging in the private practice of law to be well within the stated object of the statute. We judicially note that of all the executives and officials affected by Act 11, the Attorney General is the only one legally required to be a practicing attorney. To the extent he may so engage, his public service is curtailed. As regards this matter, it appears the legislature determined the best interest of the public would be served by an adequately paid full time Attorney General, than by a lesser paid official who might devote part of his time to the private practice of law. Since the legislature deemed this restriction necessary to authorize the increase to the Attorney General, it carries out the purpose of and falls within the scope of the act's title. Whatever is naturally connected with and is incidental or germane to the one purpose of the act may be included. Ricks, above.
Assuming, for argument's sake, the provision respecting the Attorney General was invalid, it would not, in view of the severability clause and the jurisprudence, nullify the act in its entirety. See Ricks v. Department of State Civil Service, above.
Article III, Section 8, of the Constitution provides that legislative sessions convening in odd numbered years "shall be restricted to budgetary or fiscal matters." It further states that extension of such a session to other matters shall require the consent of three-fourths of the elected members of each house. Appellants argue that Act 11 is not budgetary or fiscal in nature. It is noteworthy that the House Committee on the Affairs of the House declared the bill fiscal before reporting the measure favorably. We also observe that Webster's Third New International Dictionary, Unabridged, 1963, defines "fiscal" as follows:
"(1) of or relating to taxation, public revenue, or public debt management and policies; (2) of or relating to financial matters generally."
We believe it evident that payment of salaries and expense allowances to public officers and officials relate to public revenues and constitute a financial matter inasmuch as expenditures of public funds are concerned. We deem such matters fiscal or budgetary and, therefore, properly considered at an odd numbered year session of the legislature without the three-fourths consent requirement of Constitutional Article III, Section 8.
It is next contended Act 11 is void in that it violates Constitutional Article III, Section 23, which reads as follows:
"§ 23. Rejected matters; resubmission; consent
Section 23. No bill, ordinance or resolution, intended to have the effect of a law, which shall have been rejected by either house, shall be again proposed in the same house during the same session, under the same or any other title, without the consent of a majority of members elected to the house by which the same was rejected.
Appellants maintain that since House Bills 232 and 11, both essentially the same as House Bill 264, were rejected by the House on June 3, and June 5, respectively, it was necessary to obtain the consent required in Article III, Section 23, above, to consider House Bill 264's Section 7. We find substantial variances in the measures concerned. House Bill 11 provided additional legislative compensation by bringing the compensation for each member "for attendance at legislative sessions and at meetings of interim and all other committees, boards and commissions" up to the *286 greatest amount paid to any member of the legislature "for all such service". It also proposed a legislative per diem equal to 1½ times the amount paid to other board and commission members who were not legislators. House Bill 232 would have provided each legislator a $10,000 annual expense allowance and also allow additional salary for the Clerk of the House and the Secretary of the Senate.
We find that Article III, Section 23, above, is a prohibition against twice considering the same measure, not the same general topic or subject matter. To otherwise construe the Article would mean that once any aspect of a broad general topic is considered and rejected, nothing related to the subject matter could thereafter be considered without the consent required. We can readily envision the chaos resulting from such a construction. The article does not state that the same subject matter may not be considered. It provides, in effect, that once a bill, ordinance or resolution is defeated, it shall not again be proposed in the same house without the requisite consent. House Bill 264 was not House Bill 11 or 232, under a separate title. It was a separate, independent measure dealing with the same general subject matter. Being an entirely separate measure, it did not come within the purview of Article III, Section 23. Any other conclusion would materially hamper the legislative process.
Appellants contend Act 11 is void for two other related reasons. It is argued that it violates Constitutional Article IV, Section 1, which provides that no money shall be drawn from the treasury except in pursuance of specific appropriation made by law. It is first argued that Act 11 contains no appropriation. Alternatively, it is claimed that if it is an appropriation measure, it violates Article IV, Section 11 of the Constitution, which recites that no appropriation measure shall be passed in the last five days of a legislative session. Appellees contend the authority found in Act 11 for the Legislators and officials to draw the salaries and allowances on their own warrants constitutes sufficient ground for payment by the treasurer and no appropriation is required therefor.
No case in point from our own jurisprudence has been brought to our attention by either party with regard to the applicability of Article IV, Section 1. It appears, however, a similar problem has been encountered in other jurisdictions. For example, the Supreme Court of Vermont has held that a like provision requires no sacramental use of words, no technical expression. All that is required is valid enactment assigning public revenues to a particular use or purpose. City of Montpelier v. Gates et al., 106 Vt. 116, 170 A. 473. To the same effect see City of Reno v. McGowan, 84 Nev. 291, 439 P.2d 985, Supreme Court of Nevada; Riley v. Carter, Auditor, 165 Okl. 262, 25 P.2d 666, 88 A.L.R. 1018; Thomas v. Owens, 4 Md. 189.
The rationale of the cited cases is the inherent legislative right of control over public revenues. The authorities recognize that the purpose of such requirements is to secure regularity, punctuality and fidelity in the disbursement of public funds in paying the state's obligations. The restriction is not basically to curtail the legislature's authority over public revenues. Riley, above, involved compensation of a justice of the Supreme Court of Oklahoma. In determining whether a specific appropriation was required, the Court stated in effect that where an office is constitutionally created, the Constitution itself authorizes payment of the salary or compensation provided therefor.
We have examined and considered the cited authorities in detail and conclude that the reasoning is sound insofar as it applies to salaries and compensation of officials having constitutional status. It is elementary that each of the three branches of government, legislative, executive, and judicial, has its own sphere of authority upon which neither of the others may infringe. This arrangement is indispensable *287 to our democratic form of government. Unquestionably, the legislature controls the purse strings and its authority in this regard is not to be impinged upon, save and except where grave constitutional issues are concerned. By the same token, operation of the coordinate executive and judicial branches of government may not be hampered or rendered impotent by legislative failure or refusal to appropriate funds for their operation pursuant to constitutional authorization. Any other result could possibly lead to unbridled legislative authority, a result utterly contrary to our state constitution. To minimize the possibility of such eventuality, we hold that any legislative expression regarding payment of salaries or expenses of members of the legislature and other constitutional officers will be liberally construed in favor of validity. Any evidence whatsoever of legislative intent is regarded as authority for the State Treasurer, or other appropriate authority, to pay sums for these purposes. We are fortified in this view by Houston v. Jumel, Man.Unrep.Cas. 362 (1880), which held in effect that, even though our state government is required to operate on a balanced budget, refusal to pay judicial salaries cannot be based upon an alleged lack of revenues. We hold, therefore, that the authority contained in Act 11, for the officials concerned to draw the sums allotted on their own warrant, is sufficient mandate for the Treasurer to pay same.
Article III, Section 34, of the State Constitution stipulates:
"Salaries of public officers, whether fixed in this Constitution or otherwise, may be changed by vote of two-thirds of the members of each House of the Legislature."
Appellants contend in essence that the foregoing requires a favorable two-thirds vote of the number of elected members of each house at every step of the enactment procedure. Alternatively, it is argued that two-thirds means two-thirds of the members present according to the opening roll call for the day's session at which the measure is voted upon. Conversely, appellees maintain the provision requires only that such a measure pass by a vote of two-thirds of a quorum of members of each house present and voting when the measure is called up for final passage. It is conceded the House is composed of 105 members thus requiring a vote of 70 to constitute two-thirds of the members elected to that chamber. Also acknowledged is the fact that the Senate consists of 39 elected members, two-thirds of which is 26. The House Journal for June 5, 1969, indicates an opening roll call presence of 99 members and a vote of 54 yeas to 22 nays when House Bill 264 was moved to final passage. Appellants therefore contend at least 66 votes were thus required (two-thirds of the members shown to be present on roll call). Appellants also point out that on final passage in the Senate the bill received a vote of 24 yeas to 11 nays, two short of the 26 votes required to constitute two-thirds of the elected members of the Senate. It is also conceded that in both the Senate and House, the bill received a two-thirds vote of those Senators and Representatives present and voting and that, in each instance, a quorum was present.
Counsel for appellants cites authorities from other jurisdictions in support of the contention that a "vote of two-thirds of the members of each House", as used in Article III, Section 34, means two-thirds of the members elected thereto. In addition, counsel cites numerous other sections of Article III employing various terms to define a percentage vote of the legislature in stated instances. Counsel refers to Section 8 in which "two-thirds of the members elected" are required to introduce legislation after the 21st day of a regular session and "the consent of three-fourths of the elected members of each house" required to extend a fiscal session to nonfiscal matters. Counsel notes Section 10 which authorizes either house to expel a member "with the concurrence of two-thirds of all its members elected." Section 19 provides that as regards a quorum, a "majority of the members *288 of each house of the legislature" is required. Other sections employ terms such as "desire of one-fifth of the members elected", Section 21; "consent of a majority of members elected to the house", Section 23; "majority of the members elected to each house", Section 24; "a majority of the members elected", Section 25, and "two-thirds of the members of each House", Section 34. It is argued that it is only logical that the Constitution in each instance means the indicated fraction of all elected members of each house. Appellants further contend that since Article III, Section 19, which determines a quorum, recites "a majority of the members of each house", is generally accepted as meaning a majority of elected members, the same meaning should be given Section 34, which is textually indistinguishable.
We find, however, our own Supreme Court has decided in State ex rel. Garland v. Guillory, 184 La. 329, 166 So. 94, that the provision "two thirds vote of the membership of each house", contained in Article VII, Section 34, governing increases and decreases in judgeships in judicial districts, means two-thirds as legally constituted by the presence of a quorum and not two-thirds of the total elected members to each chamber. While United States v. Ballin, 144 U.S. 1, 12 S.Ct. 507, 36 L.Ed. 321, is not exactly in point, the observations made therein are germane to the issue at hand. Ballin held that where a majority necessary to a quorum is present in Congress, a majority of that quorum is sufficient to transact business. In Doll v. Flintkote Co., 231 La. 241, 91 So.2d 24, it was held that a provision in the New Orleans City Charter requiring a "two-thirds vote" meant a two-thirds vote of the members present and constituting a quorum.
We also find that the interpretation in our own Guillory and Doll cases, above, accords with that of numerous other jurisdictions which hold that where a proportionate vote of the legislature is constitutionally required, it means that percentage of those present and constituting a quorum, unless special terms are employed clearly indicating a different intent. See Missouri, K. & T. Railway Co. v. Simons, 75 Kan. 130, 88 P. 551, and cases therein cited. See also Cooley's Const. Limit, 7th Edition, page 201, note 2. On authority of Guillory, above, which interprets a similar provision indistinguishable from the one here concerned, we conclude that the two-thirds vote required by Article III, Section 34, means two-thirds of a quorum present and voting. It does not mean two-thirds of the elected members of each chamber; neither does it envision two-thirds of the members present as shown on the opening roll call of the day when the measure is acted upon.
It goes without saying, however, that for a measure of this nature to finally pass, the vote constituting two-thirds of the members present and voting must also equal at least a majority of the elected members of each chamber. This is necessarily so because of the provisions of Article III, Section 24, of the Constitution which expressly provide that no bill shall become a law unless on its final passage, it receives a favorable vote of a majority of the members elected to each house. Compliance with this basic mandate is indispensable to validity of any legislation.
Counsel for appellants maintains that where a two-thirds vote is required on a measure, a conference committee report can be adopted only by a two-thirds vote of each chamber. In this regard, we note Article III, Section 25, of the Constitution which provides:
"Section 25. No amendments to bills by one house shall be concurred in by the other, nor shall reports of conference committees be adopted in either House, except by a majority of the members elected thereto * * *."
It is argued, on authority of East Jefferson Waterworks District No. 1 v. Caldwell & Co., 170 La. 326, 127 So. 739, and Middleton v. Police Jury, 169 La. 458, 125 So. 447, that where a two-thirds vote of the total *289 membership of each house is required to enact legislation, any amendment to the measure by one house must be approved by a two-thirds vote of the other chamber. We note that the cited authorities dealt with proposed constitutional amendments. They held that amendments of no importance or of little substance were properly adopted by majority vote. The implication attributed thereto by appellants is that amendments of substance require a two-thirds vote.
It appears that in general, Article III, Section 25, was intended to cover the precise situation herein encountered, namely, where a measure is finally passed in one chamber, is amended and finally passed in the other house and the house of origin refuses to concur in the amendment. In such a situation a legislative stalemate could easily result but for the resolutory procedure authorized and sanctioned by Article III, Section 25. Appellants suggest that in such instances the measure fails due to lack of proper legislative approval. On the contrary, we find the apparent purpose of the provision is to afford a method of reconcilement of legislative views in situations of this nature. In this manner, legislation which has passed in each house may be salvaged, thus expediting rather than thwarting the legislative process. Assuming that the Caldwell and Middleton cases, above, stand for the proposition advanced by appellants, it appears the effect of said decisions has been nullified by the subsequent adoption of Article III, Section 25.1, approved by the electorate November 8, 1966. Section 25.1 provides:
"Notwithstanding any provisions elsewhere contained in this Constitution to the contrary, no amendment to any bill or measure levying * * * new state taxes * * * made by one house shall be concurred in by the other, nor shall reports of committees of conference on any such bills or measures be adopted in either house, except by two-thirds of the members elected thereto * * *."
So far as we can determine Section 25.1 constitutes the sole exception to Section 25. We conclude Section 25.1 carries the import that except in the instances therein specified, conference committee reports may be adopted by majority vote as provided in Section 25.
We find no substance in the contention that a measure must again be called for final passage in each chamber after adoption of a conference committee report. A conference committee irons out discrepancies in measures already passed in each house. Adoption of the committee report merely resolves all differences resulting from amendments upon which the respective houses could not otherwise agree. Approval of the committee report places both houses in full agreement; on this form the measure becomes law.
The judgment of the trial court is affirmed at appellants' cost.
Affirmed.