35 F.3d 296
 CROWN LIFE INSURANCE COMPANY, Plaintiff,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, et al.,
Defendants.
TRI-CENTERS PROPERTIES, LTD., etc., Cross-Plaintiff/Appellee,
v.
Earle W. ARONSON, Cross-Defendant/Appellant.
 No. 93-4026.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 3, 1994.
Decided Sept. 13, 1994.
 
 Michael Weininger, Lawrence M. Karlin, Katz, Randall & Weinberg, Chicago, IL, for Crown Life Ins. Co.
 Michael D. Richman (argued), Nathan H. Dardick, Sachnoff & Weaver, Richard C. Jones, Jr., Malk & Harris, Chicago, IL, for Tri-Centers Properties, Ltd.
 Tobin M. Richter (argued), Donald L. Johnson, Chicago, IL, for Earle W. Aronson.
 Before FAIRCHILD, CUMMINGS and EASTERBROOK, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 This suit concerns the sale of three Illinois shopping centers originally purchased in 1986 by a Land Trust whose sole beneficiary was appellee Tri-Centers Properties, Ltd. ("Tri-Centers"). This purchase was financed by plaintiff Crown Life Insurance Company ("Crown Life") for approximately $3,000,000. In 1991 the shopping centers were sold by the Trust[1] to appellant Earle W. Aronson for $4,300,000 payable in installments.
 
 
 2
 In May 1991 Aronson took possession of the properties and made installment payments to Tri-Centers for one year. In 1992 Aronson ceased making payments to Tri-Centers. Consequently Tri-Centers was unable to continue making monthly mortgage payments due to Crown Life. In response, Crown Life instituted this foreclosure suit against Aronson and Tri-Centers and had a receiver appointed to take possession of the properties. Tri-Centers in turn filed a cross-claim against Aronson asserting that by defaulting on the contract for sale of the shopping centers, Aronson had forfeited and terminated the contract.
 
 
 3
 In December 1992 the district court entered a judgment for foreclosure and sale of the properties. In January 1993 Tri-Centers amended its cross-claim to seek recovery of the accelerated balance of installments due from Aronson under their contract.
 
 
 4
 On May 11, 1993, the district court granted Tri-Centers' summary judgment motion against Aronson. Aronson then sought leave to file a four-count counterclaim against Tri-Centers. This motion was denied on the ground of tardiness. On November 17, 1993, the district court entered Tri-Centers' proposed final judgment order against Aronson in the amount of $1,855,178.06. Aronson now appeals the district court's determination that he is liable for damages under his contract with Tri-Centers.[2]
 
 Facts
 
 5
 Crown Life is a Canadian life insurance company. American National Bank and Trust Company of Chicago is the Land Trustee that purchased the shopping centers for Tri-Centers Properties, an Illinois partnership and the sole beneficiary of the Land Trust. Aronson is an Illinois citizen.
 
 
 6
 In May 1986 the Land Trust borrowed $2,812,500 from Crown Life to purchase three commercial shopping centers. Crown Life secured a mortgage on the shopping centers. In 1991, the Land Trust entered into a contract with Aronson for the sale of the three shopping centers. Under the terms of the contract, Aronson agreed to pay $4,300,000 to Tri-Centers for the properties. He was to pay $50,000 upon execution of the contract and $700,000 at the time of closing. The balance of $3,550,000 was to be paid in monthly installments of $32,541.66 until June 1994. Tri-Centers expected to pay the mortgage obligation due to Crown Life from these monthly payments. Crown Life consented to Tri-Centers' selling the shopping centers to Aronson.
 
 
 7
 Aronson was given possession of the properties when the contract closed on May 1, 1991, and for the next twelve months he made timely payments. However, in June 1992 he stopped making payments to the Land Trust and never cured his default. Despite the fact that he continued to collect rental income from the shopping centers, he paid none of it to the Trust. Because of Aronson's failure to make the monthly payments, the Land Trust was unable to continue making monthly payments to Crown Life, causing it to default on the mortgage. Crown Life thereupon notified the Land Trust and Tri-Centers that because of the default, it had elected to accelerate the entire unpaid principal.
 
 
 8
 On July 23, 1992, Crown Life commenced this litigation by filing suit to foreclose its mortgage on the shopping centers. The district court appointed a receiver, Grubb & Ellis Co., who took possession of the properties on July 27, 1992. Possession of the properties was never regained by the Land Trust or Tri-Centers.
 
 
 9
 In September 1992 Tri-Centers filed both an answer to Crown Life's complaint and a cross-claim seeking to forfeit its contract with Aronson. In October 1992 the district court entered a default order against Aronson and the Land Trustee that terminated all of their interests in the property at issue. Tri-Centers realized that as a result of this order it could not hope to regain possession of the shopping centers from Aronson. It therefore notified Aronson's counsel that it would seek damages from Aronson for his breach of the contract rather than forfeiture.
 
 
 10
 On December 22, 1992, the district court entered a judgment for foreclosure and sale of the shopping centers. On the same day, the district court granted Tri-Centers leave to file an amended cross-claim. On January 13, 1993, Tri-Centers amended its cross-claim. In its pleading, Tri-Centers claimed that in May 1992 Aronson had stopped making installment payments due under the contract for sale of the shopping centers; that he had failed to cure this default; and that Tri-Centers was therefore entitled to accelerate the remaining balance due under the contract.
 
 
 11
 In response, Aronson asserted a single affirmative defense, that Tri-Centers' money damage claim was barred under the doctrine of election of remedies because, according to Aronson, Tri-Centers had already voided the contract for the sale of the shopping centers.
 
 
 12
 In May 1993 the district court granted Tri-Centers' motion for summary judgment on the issue of liability (App. 64-71) and rejected Aronson's position that the doctrine of election of remedies shielded him from money damages under the contract. The court noted that the sales contract provided that "a party's election of one remedy would not bar that party's subsequent attempts to exploit other remedies" and that Illinois had no public policy against such a provision. The court also noted that even if the doctrine of election of remedies did apply, Tri-Centers was not precluded from recovering damages since it had not actually elected a remedy. Tri-Centers' actions, the court concluded, were merely an expression of an intent to seek forfeiture and thus did not constitute an election of remedy. The district court also noted that the doctrine of election of remedies would not apply since Aronson had failed to demonstrate (1) that there was a threat of double recovery, (2) that he had detrimentally relied on Tri-Centers' early indication that it wanted to renounce the contract or (3) that Tri-Centers' damage claim was barred by res judicata. The amount of damages was left open for further disposition.
 
 
 13
 On July 30, 1993, the district court rejected two additional affirmative defenses offered by Aronson after the court's summary judgment order. The court then granted Tri-Centers' motion for prove-up of damages (App. 79-87). Chief Judge Moran found Aronson liable to pay the difference between the amount due Tri-Centers on the installment contract and the $2.2 million paid by Crown Life at the foreclosure sale.
 
 
 14
 On August 20, 1993, Aronson filed a motion for leave to file a four-count counterclaim against Tri-Centers. Aronson's proposed counterclaim was denied in October 1993 on the ground of tardiness (App. 101-109). In November 1993 judgment was entered for Tri-Centers and against Aronson for $1,855,178.06 (App. 122), resulting in this appeal.
 
 Discussion
 
 15
 Aronson first argues that Tri-Centers forfeited the contract, and is therefore barred by the doctrine of election of remedies from claiming money damages. However, as Judge Moran pointed out, the contract itself stated that one party's election of a remedy, here forfeiture, did not bar it from subsequently attempting to enlist another remedy and that Illinois had no public policy against providing for cumulative remedies. We agree. The contract for sale of the three shopping centers provided that "[a]ll rights and remedies given by Buyer or Seller shall be distinct, separate, and cumulative, and the use of one or more shall not exclude or waive any other right or remedy allowed by law...." This provision clearly allows Tri-Centers to pursue multiple remedies.[3] Moreover, Aronson is unable--even at this late date--to point to a single case that suggests that a contract permitting cumulative remedies is contrary to Illinois public policy.
 
 
 16
 Furthermore, even if the doctrine of election of remedies were to apply, Tri-Centers never elected a remedy. As the district court correctly noted, although Tri-Centers expressed an intent to declare forfeiture of the contract, there was no actual forfeiture. An election of remedy occurs only when a party accepts the benefit of pursuing the initial remedy. Ransburg v. Haase, 224 Ill.App.3d 681, 167 Ill.Dec. 23, 28-29, 586 N.E.2d 1295, 1300-01 (3d Dist.1992), appeal denied, 145 Ill.2d 644, 173 Ill.Dec. 13, 596 N.E.2d 637 (1992); Faber Coe & Gregg, Inc. v. First National Bank of Chicago, 107 Ill.App.2d 204, 246 N.E.2d 96, 99-100 (1st Dist.1969); 25 Am.Jur.2d, Election of Remedies, Sec. 16 at 659 (1966). Here a forfeiture was never effected. Tri-Centers, therefore, never received any benefit from pursuing such a remedy. Since Tri-Centers merely commenced an action seeking that the district court declare the contract forfeit, no election of remedy occurred.
 
 
 17
 Aronson next argues that Tri-Centers elected the remedy of forfeiture when he "turned over the keys" to the court-appointed receiver. He claims that this event put Tri-Centers in "constructive possession of the properties." Aronson, however, waived such an argument by failing to raise it before the district court. Snider v. Consolidation Coal Co., 973 F.2d 555, 561 (7th Cir.1992), certiorari denied, --- U.S. ----, 113 S.Ct. 981, 122 L.Ed.2d 134 (1993). Moreover, Aronson completely fails to establish that the relinquishment of the property to a court-appointed receiver is an act sufficient to establish an election of remedy. He does not cite a single case that would support this claim.
 
 
 18
 Aronson also contends that he was not the cause of Tri-Centers' default to Crown Life. Tri-Centers, however, paid Crown Life the amounts it received from Aronson and, as Judge Moran noted, without that cash flow, Tri-Centers was unable to continue its payments to Crown Life (App. 110 at 2). The district court, therefore, did not commit clear error when it concluded that Aronson's failure to make the installment payments due under the contract led to Tri-Centers' defaulting on its mortgage to Crown Life.
 
 
 19
 Aronson also claims that the district court abused its discretion by refusing to allow him to file a four-count counterclaim against Tri-Centers on the grounds that pleading was made too late. However, it is within the district court's discretion to disallow a counterclaim on the ground of tardiness. Manor Healthcare Corp. v. Guzzo, 894 F.2d 919, 923 (7th Cir.1990). Here Aronson attempted to file his counterclaim three months after the district court had granted summary judgment in favor of Tri-Centers and just as a final judgment order was to be entered. This was clearly too late. E.g., Carroll v. Acme-Cleveland Corp., 955 F.2d 1107, 1114 (7th Cir.1992). Finally, compulsory counterclaims such as Aronson's are waived when not filed along with the answer, Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 360 (7th Cir.1990). This Court can find no reason to justify Aronson's failure to file his counterclaim at that time. Cf. McLemore v. Landry, 898 F.2d 996, 1003 (5th Cir.1990), certiorari denied sub nom. River Villa Partnership v. Sun Belt Federal Bank, 498 U.S. 966, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990).
 
 
 20
 This Court has reviewed the various other errors suggested directly and indirectly by Aronson's brief and is convinced that those claims are without merit and do not warrant discussion. Since none of Aronson's arguments is persuasive, the final judgment awarding Tri-Centers $1,855,178.06 (App. 121) is affirmed.
 
 
 
 [1]
 In this opinion the Land Trust and Tri-Centers are used interchangeably
 
 
 [2]
 Aronson does not challenge on appeal the district court's calculation of the amount of damages awarded to Tri-Centers
 
 
 [3]
 Aronson contends, as he did in the district court, that under Bruno Benedetti & Sons, Inc. v. O'Malley, 124 Ill.App.3d 500, 79 Ill.Dec. 694, 464 N.E.2d 292 (2d Dist.1984), a contract clause providing for cumulative remedies cannot be applied once a party has forfeited a contract. But as the district court correctly pointed out, the court in Bruno Benedetti refused to apply the cumulative remedies provision in that case because to do so would have rendered meaningless a clause in that contract providing that the parties' agreement became "null and void" upon the filing of a declaration of forfeiture. The contract at issue here contains no such provision. Bruno Benedetti does not stand, as Aronson suggests, for the pro-position that cumulative remedies provisions may never be applied once a party has forfeited a contract. The Bruno Benedetti court merely interpreted the contract before it