**VALLEY DISPOSAL INC., Palisades Landfill and Recycling Corporation and Robert C. Dowdell, Jr., Plaintiffs–Appellants,**

v.

**CENTRAL VERMONT SOLID WASTE MANAGEMENT DISTRICT, Defendant–Appellee.**

No. 967, Docket 96–7726.

United States Court of Appeals, Second Circuit.

Argued Feb. 24, 1997.

Decided May 14, 1997.

John L. Franco, Jr., Burlington, VT, for Plaintiffs–Appellants.

Glenn Cornelius Howland, Montpelier, VT (McKee, Giuliani & Cleveland, Montpelier, Vermont, on the brief), for Defendant–Appellee.

Before: VAN GRAAFEILAND, MESKILL, and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

This case returns to us yet again, following appeals in which plaintiffs Valley Disposal Inc. ("Valley Disposal"), *et al.*, first succeeded in obtaining a partial reversal of the dismissal of their complaint and a remand for further proceedings, *see Valley Disposal, Inc. v. Central Vermont Solid Waste Management District*, 31 F.3d 89 (2d Cir.1994) ("*Valley Disposal I*"), and then successfully defended an award of $36,971.90 in attorneys' fees pursuant to 42 U.S.C. § 1988 (1994) in connection with the action and obtained a remand with respect to the denial of fees in connection with their fee application, *see Valley Disposal, Inc. v. Central Vermont Solid Waste Management District*, 71 F.3d 1053 (2d Cir.1995) ("*Valley Disposal II*"). Having obtained, on the second remand, an increase in the attorneys' fee award to $42,974.71, plaintiffs now appeal from so much of a judgment of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Judge*, as allows defendant Central Vermont Solid Waste Management District (the "District") to · use part of a $200,000 state-court judgment against plaintiffs as a setoff against the $42,974.71 fee award. Plaintiffs contend that the district court erred in allowing the setoff (1) because as to the fee recovery in this suit their attorneys have a lien that has priority over any counterclaim or setoff, or (2) because the District waived its claim for a setoff by failing to raise it in timely fashion. Although there are questions as to the first contention, we agree with the second, and we accordingly reverse.

## I.  BACKGROUND

The history of this litigation is set out more fully in *Valley Disposal I* and *Valley Disposal II*, familiarity with which is assumed. Briefly, plaintiff Robert C. Dowdell, Jr., is the president and a principal owner of Valley Disposal, a solid waste hauler, and of plaintiff Palisades Landfill and Recycling Corp. ("Palisades Landfill"), a landfill operator. The District is a municipal entity. Be-

ginning in 1990, the District and another Dowdell corporation, Palisades Recycling Corp. ("Palisades Recycling"), became embroiled in litigation in Vermont state court with respect to municipal taxes and surcharges. In August 1993, the state court awarded the District a total of $487,823.13, including interest, on its counterclaims. Palisades Recycling appealed.

In the meantime, in 1992, the District enacted a flow control ordinance and regulations prohibiting private waste haulers from hauling waste outside of the District and requiring them to dump their waste at a landfill owned by C.V. Landfill, Inc. ("C.V."). In 1993, plaintiffs brought the present action against the District and C.V. pursuant to 42 U.S.C. § 1983 (1994) alleging, *inter alia,* that the District's flow control ordinance violated the dormant Commerce Clause of the Constitution. The district court dismissed the complaint on various procedural grounds; in August 1994, this Court largely reversed and remanded for further proceedings. *See Valley Disposal I,* 31 F.3d at 105.

While the various appeals were pending, the United States Supreme Court decided *C & A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994), striking down a flow control ordinance as violative of the dormant Commerce Clause, and the parties here entered into a contingent agreement to settle both the state-court litigation and the present case. Under the settlement agreement, the two actions were to be dismissed with prejudice; Dowdell was to pay "the sum of $200,000 in full settlement of all claims of [the] District against Dowdell"; and the District was to cease its efforts to enforce the flow control ordinance against plaintiffs.

Following the remand in *Valley Disposal I,* the parties' contingent settlement was somewhat revised and was finalized. On September 30, 1994, plaintiffs in the present action filed their notice of appearance in the state-court action, along with the parties' stipulation requesting that judgment be entered therein in favor of the District against Dowdell and his three corporations in the amount of $200,000. A state-court judgment was entered in accordance with the stipula-

tion on October 24. On October 14, 1994, the present action was dismissed with prejudice, on consent of the parties. On October 21, plaintiffs filed their application, dated October 19, 1994, in the present action for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

On November 2, the District filed its opposition to the fee application,

> arguing (1) that the matter was *res judicata* because the plaintiffs had specifically requested attorneys' fees in their complaint, which had been dismissed with prejudice; (2) that the plaintiffs had waived their right to seek attorneys' fees by entering into the settlement agreement and seeking dismissal of the complaint; and (3) that the district court lacked subject matter jurisdiction over the motion for fees, absent a timely appeal or motion to amend the dismissal order.

*Valley Disposal II,* 71 F.3d at 1055. The District also argued that plaintiffs were not prevailing parties, and that the fee request was unreasonable because they had enjoyed only limited success. The District's opposition made no suggestion that its $200,000 state-court judgment, entered a week earlier, should be set off against any award of attorneys' fees. In an order dated December 20, 1994, the district court rejected the District's arguments and awarded plaintiffs $36,971.90 in fees, though it denied, without explanation, any award for the cost of making the fee application.

The District appealed the award of attorneys' fees, pursuing the arguments it had made in the district court; plaintiffs cross-appealed the denial of fees for the expense of making the fee application. In *Valley Disposal II,* we ruled in favor of plaintiffs on all points, upholding the fees that had been awarded and remanding for an explanation of the denial of an award for the cost of making the application. *See* 71 F.3d at 1060. Following that remand, the district court granted, without opposition from the District, plaintiff's request for additional fees of $6,002.81 for the expense of preparing the § 1988 fee petition, bringing the total attorneys' fee award to $42,974.71. Judgment was entered accordingly.

Thereafter, the District refused to comply with the judgment ordering it to pay the attorneys' fee award. Plaintiffs moved for an order to show cause why the District should not be held in contempt. In opposition to plaintiffs' contempt motion, the District submitted a "motion for an order allowing equitable setoff of its judgment against plaintiffs' § 1988 award of attorneys [*sic*] fees and costs" ("District's Postjudgment Motion for Setoff"), arguing for the first time that it should not have to pay the § 1988 award because it was entitled to set off part of its $200,000 state-court consent judgment, which had not yet been paid, against the judgment for attorneys' fees.

After a hearing, the district court initially ruled that the District had waived its right to assert a setoff. Having noted that "it wasn't until the Plaintiffs brought in effect a motion for sanctions and contempt in the attempt to execute on the judgment that [the District] first raised this issue," (Hearing Transcript, March 11, 1996, ("Tr."), 5), the court stated its

opinion that there could have been a setoff at one time, but in view of the fact that it was never raised ... it was waived in connection with this fee motion[;] it could have been raised innumerous times before
...

(Tr. 19). However, on reconsideration, the court ruled that the District's setoff claim had not been waived:

The motion for attorneys' fees under § 1988 was made pursuant to Fed.R.Civ.P. 54(d)(2). At that time, there was no requirement under the Federal Rules of Civil Procedure that the defendant assert the state court judgment as a setoff either mandatory or permissive.
....
Assuming that, pursuant to a 54(d)[ (2) ] motion, Fed.R.Civ.P. 13 is applicable, defendants' entitlement to a setoff arose only after October 19 [*sic*], 1994, when plaintiffs filed the § 1988 fee petition. [S]ince the stipulated judgment for defendant entered in the Washington Superior Court was not made until October 24, 1994, there is no waiver, since at the time of plaintiffs' motion, defendants had no entitlement to

setoff whether it be mandatory or permissive.

Opinion and Order dated May 16, 1996, at 3–4. Having decided that there had been no waiver, the court ruled that the District was entitled to have its state-court judgment set off against the fee award because such an award (a) is made to the party rather than to the attorneys, and (b) involves merely the manner in which the attorneys may be paid, not their entitlement to receive payment. *See id.* at 4.

Judgment was entered "order[ing] that the[ awarded attorneys'] fees shall be set off against Defendants' [*sic*] stipulated judgment in the amount of Two Hundred Thousand dollars ($200,000) entered in Washington Superior Court, State of Vermont." This appeal followed.

## II. DISCUSSION

On appeal, plaintiffs contend that the judgment allowing setoff was error because (1) the nature of an award of attorneys' fees under § 1988 gives attorneys an equitable priority that is superior to any claim of setoff a defendant might have, (2) under Vermont law attorneys have a lien that has priority over a defendant's claim of setoff, and (3) even if the District had a right of setoff that would not have been subordinate to the attorneys' lien, the District waived that right by failing to bring the setoff claim to the district court's attention prior to the entry of judgment awarding the fee. Though we have questions as to the first two contentions, we find clear merit in the third.

### A. The Claims of Priority

#### 1. The Contention that a Lien Was Created by § 1988

Plaintiffs contend first that, in providing for an award of attorneys' fees under § 1988, Congress evinced an intent that attorneys for successful civil rights plaintiffs obtain an "equitable priority" in the fee award that is superior to claims of other parties. (Plaintiffs' brief on appeal at 12–15.) This contention finds support in *Curtis v. City of Des Moines,* 995 F.2d 125 (8th Cir.1993), al-

though neither the text of § 1988 nor its legislative history clearly indicates that this was Congress's intent.

Section 1988 provides that in a federal civil rights action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The legislative history explained that "[i]f private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S.Rep. No. 94–1011, at 3 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910. This Court, noting § 1988's provision for fees to be awarded to the "party," has interpreted § 1988 to mean that the person who is entitled to the award of attorneys' fees is "the prevailing party rather than the lawyer." *Brown v. General Motors Corp.*, 722 F.2d 1009, 1011 (2d Cir.1983) ("*Brown* "). The Supreme Court endorsed this plain-meaning interpretation of § 1988 in *Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), when it held that a party's entitlement to a fee award enabled the party to waive such an award, if it were so inclined. *See id.* at 737–38, 106 S.Ct. at 1542–43. The Court noted that although Congress added the entitlement to attorneys' fees "to the arsenal of remedies available to combat violations of civil rights," it did not "bestow[ ] fee awards upon attorneys." *Id.* at 731–32, 106 S.Ct. at 1540.

■ It is clear, however, that Congress meant not simply to allow a civil rights claimant to pursue a meritorious constitutional claim without having to pay attorneys' fees out of his own pocket, but also to encourage competent attorneys to prosecute those claims. "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (quoting H.R.Rep. No. 94–1558, at 1 (1976)); *see also Venegas v. Mitchell*, 495 U.S. 82, 90, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74 (1990) (" § 1988's general purpose [is] enabling . . . plaintiffs in civil rights cases to secure com-

petent counsel"), and hence the fee rates used by the court should be " 'adequate to attract competent counsel,' " *Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (quoting S.Rep. No. 94–1011, at 6 (1976), *reprinted in*, 1976 U.S.C.C.A.N. 5908, 5913). Although *Brown* and *Evans* make clear that the fee award belongs to the party, neither case involved the question of whether a fee award made by the court to the party was subject to a lien in favor of the attorney. *Brown* dealt only with the question of whether an attorney could recover fees under § 1988 from the defendant when the client had settled with the defendant and agreed to waive the right to receive such fees. *Evans* dealt with a plaintiff class's ability to barter its right to attorneys' fees in exchange for more favorable injunctive relief than it could reasonably hope to win after trial.

The lien issue was squarely before the Eighth Circuit in *Curtis v. City of Des Moines*. Curtis was a successful § 1983 claimant who was awarded $11,000 in damages and $49,000 in attorneys' fees in the district court. In connection with that action, Curtis had agreed to pay his attorneys a contingent fee or the amount of any § 1988 award, whichever was greater. Prior to the conclusion of that suit, however, Curtis was sued in state court; an $80,000 judgment was entered against him; and his judgment creditors filed in the district court a notice of levy based on their state-court judgment. Thereafter, Curtis confessed judgment in state court with respect to the approximately $16,000 he owed his attorneys for defending the state-court action; and Curtis's attorneys filed in the district court both the motion for attorneys' fees pursuant to § 1988 and a notice of attorneys' lien on any award of damages or fees to Curtis. The judgment creditors argued that their lien, filed earlier, had priority under Iowa law, and that given the Supreme Court's ruling in *Evans* that a fee award belongs to the party, they were entitled not only to the amount awarded to Curtis as damages but also to any amount awarded as attorneys' fees. The *Curtis* court, although concluding that the judgment creditors' lien had priority under state law with respect to so much of the federal judg-

ment as awarded Curtis damages, held that Curtis's attorneys had a superior lien under federal law on the amount awarded as attorneys' fees, stating as follows:

The clear Congressional intent and purpose of § 1988 was to encourage attorneys to prosecute constitutional violations. *See Venegas v. Mitchell,* 495 U.S. at 86, 110 S.Ct. at 1682; *Hensley v. Eckerhart,* 461 U.S. at 429, 103 S.Ct. at 1937. This is precisely what Curtis' attorneys did in prosecuting Curtis' civil rights claims against the police officials. Whatever priority the [state-court judgment creditors] have with respect to their lien on the judgment in this case has no effect on the award of § 1988 fees. Accordingly, the district court properly ruled that [Curtis's attorneys] are entitled to their fees.

*Curtis v. City of Des Moines,* 995 F.2d at 129.

*Curtis* is the only case of which we are aware that deals with the question of whether § 1988 implicitly grants the prevailing party's attorneys a lien on the fee award, and we have quoted that court's entire discussion of the legal issue. We remain uncertain whether inferring such a lien is consistent with the established principle that the client has the power to waive the fee award altogether.

### 2. The Contention that a Lien Was Created by Vermont Law

Section 1988 also provides that where there are gaps in federal law with respect to the availability of suitable remedies for civil rights violations, the courts should look to state law insofar as it is not inconsistent with federal law. 42 U.S.C. § 1988(a). Plaintiffs contend that if § 1988 itself does not deal with liens and priorities, Vermont law fills any gap here by viewing an attorney's right to payment for his services in winning a judgment for his client as a "charging lien" that is superior to the judgment debtor's claim of setoff. The merit of this contention too is unclear, and the matter is further confused by Vermont's recognition of a second type of lien in favor of attorneys.

In Vermont, an attorney's right to a charging lien is established by common law. *See Weed Sewing Machine Co. v. Boutelle,* 56 Vt. 570, 578 (Vt.1882); *Walker v. Sargeant,* 14 Vt. 247, 253 (Vt.1842). The charging lien evolved in England as a "means for protect[ing] attorneys against dishonest clients, who, utilizing the services of the attorney to establish and enable them to enforce their claims against their debtors, sought to evade payment for the services which enabled them to recover their demand." *Sunwest Bank of Roswell, N.A. v. Miller's Performance Warehouse, Inc.,* 112 N.M. 492, 816 P.2d 1114, 1116 (1991) (internal quotation marks omitted). This purpose is reflected in the decisions of the Vermont Supreme Court, which has held that the lien gives an attorney the right "to recover his taxable costs from a fund recovered by his aid, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same, and also to prevent or set aside assignments or settlements made in fraud of his right." *Weed Sewing Machine Co. v. Boutelle,* 56 Vt. at 578. The lien arises automatically upon entry of the judgment; notice is not required for its creation, *see Walker v. Sargeant,* 14 Vt. at 252, although until notice of the lien is given to a judgment debtor, the debtor may make payment to the judgment creditor without fear of liability to the attorney, *see id.; Weed Sewing Machine Co. v. Boutelle,* 56 Vt. at 578.

Like the attorney's charging lien, a defendant's right of setoff, *i.e.,* the right to reduce the judgment to be entered for the plaintiff by subtracting from the value of the plaintiff's claim an amount owed to the defendant by the plaintiff, also has its roots in common law. In essence, "[t]he right of setoff ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) (quoting *Studley v. Boylston National Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)); *see Lalime v. Desbiens,* 115 Vt. 165, 168, 55 A.2d 121 (1947) (setoff "is a demand which a defendant makes against the plaintiff in the

suit for the purpose of liquidating the whole or a part of his claim").

As to the question of whether the attorney's charging lien or the defendant's right of setoff has priority, Vermont appears to give priority to the setoff if the claim on which it is based arose prior to the suit in which the attorney's lien was created. *See, e.g., Fairbanks v. Devereaux,* 58 Vt. 359, 362, 3 A. 500 (1886); *McDonald v. Smith,* 57 Vt. 502, 504 (1884); *Walker v. Sargeant,* 14 Vt. at 254. It is not clear that the inverse is true. The *Walker* opinion appears to leave open the possibility that where the claim sought to be offset arose during the pendency of the suit that gives rise to the attorney's charging lien, the question of which of those rights has priority may be a matter for determination by the court in the exercise of its equitable discretion. *See id.*

In addition, in *Estate of Button v. Anderson,* 112 Vt. 531, 28 A.2d 404 (1942) (*"Button"*), the Vermont Supreme Court recognized a different attorney's lien, which it characterized as an "equitable lien" that arises if the fee contract entered into by attorney and client indicates that the attorneys are to "receive a specified amount of the recovered fund." *Id.* at 534–35, 28 A.2d 404. Such a lien is created if the parties have "indicate[d] an intention to make the fund described in the contract security for the debt" of the client or, in other words, if the attorney "look[s] to the fund itself for payment and d[oes] not rely on the personal responsibility of the owner of the claim of which the fund was the result." *Id.* at 536, 28 A.2d 404. In recognizing this equitable lien, the court stated that the "rules and restrictions pertaining to attorney's ... charging liens created merely by the common law do not necessarily apply to equitable liens arising by virtue of an express agreement between attorney and client...." *Id.* at 535, 28 A.2d 404. In distinguishing the equitable lien from the charging lien, the *Button* court cited two United States Supreme Court cases, *Ingersoll v. Coram,* 211 U.S. 335, 29 S.Ct. 92, 53 L.Ed. 208 (1908) and *Barnes v. Alexander,* 232 U.S. 117, 34 S.Ct. 276, 58 L.Ed. 530 (1914), *see Button,* 112 Vt. at 536–38, 28 A.2d 404, that have been read by federal courts to mean that the attorneys' equitable lien, which becomes effective upon the entry of judgment, relates back to the date the attorney commenced suit and has priority over a claim that was created during the pendency of the suit, *see Continental Casualty Co. v. Kelly,* 106 F.2d 841, 843 (D.C.Cir.1939) (per curiam) (attorney's equitable lien created by retainer agreement "is a contract lien and even if ... inchoate before judgment, it relates back and takes effect from the time of the commencement of the suit and is, therefore, superior to rights of set off which arise subsequently"); *United States Fidelity & Guaranty Co. v. Levy,* 77 F.2d 972, 975 (5th Cir.1935) (same, applying Alabama law). The *Button* court itself, however, was faced only with a dispute between attorney and client, not with competing claims by an attorney and a person other than the client, and the court made no precise ruling as to the time at which the attorneys' equitable lien is created. It stated only that in the matter before it the lien attached to the fund recovered by the attorneys at the time the fund was received by the plaintiff "at the latest." 112 Vt. at 538, 28 A.2d 404.

### 3. The Circumstances of the Present Case

In the present case, plaintiffs submitted to the district court an affidavit from John L. Franco, Jr., the attorney who has represented them continuously in this action, which was commenced in 1993, stating that both the original firm of attorneys representing plaintiffs and Franco, who left the firm in February 1995, "provided the legal services in this case under the arrangement that payments of all attorneys [*sic*] fees and litigation costs would come from the § 1988 fees award." (Affidavit of John L. Franco, Jr., dated February 15, 1996, ¶¶ 1–2.) The District's $200,000 claim against plaintiffs plainly arose after the initial fee arrangements were entered into. Until the parties reached their global settlement, which followed the remand in *Valley Disposal I,* the state-court action was strictly between the District and Palisades Recycling, which is not a party here; the plaintiffs in the present action did not become parties to the state-court action until September 30, 1994, when the parties filed their stipulation in that court. It was that

stipulation that gave the District its contractual claim against plaintiffs; the contract claim was then merged into the state-court judgment entered pursuant to the parties' stipulation.

Accordingly, if § 1988 creates a lien in favor of the prevailing party's attorneys, as held by the Eighth Circuit in *Curtis,* or if under Vermont law an attorney's charging lien has priority to a setoff claim that arose during the suit, or the equitable lien referred to in *Button* is created either when the fee contract is entered into or when the suit is commenced, it may well be that plaintiffs' attorneys in this lawsuit have a lien on the fee award, and that their lien has priority over the District's claim that was created by the settlement agreement and the state-court judgment during the course of this suit.

We need not resolve these potentially far-reaching questions in the present case, however, because we conclude for the reasons that follow that the District's claim of setoff was not properly raised.

B. *The District's Postjudgment Assertion of Setoff*

■ The District takes the position that "[e]quitable setoff is a defense to execution upon judgment" (District's brief on appeal at 8), apparently believing that a defendant who possesses a claim is entitled simply to refuse to pay a money judgment against it without ever having pleaded its own claim during the course of the litigation that led to the judgment. We find it unsurprising that the District cites no authority for that proposition, for the very purpose of allowing assertion of setoff as a counterclaim is to permit "entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank v. Strumpf,* —— U.S. at ——, 116 S.Ct. at 289 (internal quotation marks omitted); *see Lalime v. Desbiens,* 115 Vt. at 168, 55 A.2d 121 (purpose of setoff is to allow defendant "in the suit" to "liquidat[e] the whole or a part of his claim").

Under the Federal Rules of Civil Procedure, a defendant's claim of setoff against a plaintiff is to be made by means of counter-

claim in its answer to the complaint. *See* Fed.R.Civ.P. 13. The Rule provides for, *inter alia,* compulsory counterclaims, which generally consist of claims that a defendant has at the time of his answer and that arose out of the same occurrence or transaction as the claim asserted by the plaintiff. *See* Fed. R.Civ.P. 13(a). Such claims may, but need not, be asserted in the answer if, at the time the action was commenced, they were the subject of another pending action. *See id.* The Rule also provides for permissive counterclaims, *i.e.,* principally claims of the defendant that did not arise out of the same occurrence or transaction as the claim asserted by the plaintiff. *See* Fed.R.Civ.P. 13(b). The provision in subdivision (a) of Rule 13 for "[c]ompulsory" counterclaims does not mean that a defendant is compelled to assert the claim and cannot waive it. It means merely that if the claim is one that is within the scope of Rule 13(a) and is not asserted as a counterclaim, its assertion in a later action will be vulnerable to a defense of estoppel. *See, e.g.,* Fed.R.Civ.P. 13 Advisory Committee Note 7 (1937) ("If the action proceeds to judgment without the interposition of a counterclaim as required by subdivision (a) of this rule, the counterclaim is barred."); 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1417 (2d ed. 1990); 3 *Moore's Federal Practice* ¶ 13.12[1], at 13–52 (2d ed. 1995). Similarly, the provision for "[p]ermissive" counterclaims in subdivision (b) does not mean that the defendant who chooses not to assert such a claim in his answer is permitted to assert it at his whim later in the litigation or as a postjudgment remedy of self-help. It means merely that if he chooses not to assert it as a counterclaim, that election has no estoppel effect that would prevent him from asserting it in a later suit. *See, e.g.,* 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1420, at 156.

■ Rule 13 also provides that a claim not asserted by the defendant in his answer may, if the court allows, be asserted later in a supplemental answer if the claim had not matured or had not been acquired by the time the original answer was served, *see* Fed.R.Civ.P. 13(e), or in an amended answer

if the defendant had the claim at the time of his original answer but failed to assert it through oversight, inadvertence, or excusable neglect, or if justice requires that the amendment be allowed, *see* Fed.R.Civ.P. 13(f). A belated motion to file such a pleading may properly be denied where the delay is lengthy or where there is no reasonable explanation for the failure to assert it, or to make the motion, earlier. *See, e.g., Crown Life Insurance Co. v. American National Bank & Trust Co.,* 35 F.3d 296, 300 (7th Cir.1994) (affirming refusal to allow a counterclaim first asserted by defendant three months after the district court granted summary judgment for plaintiff); *Imperial Enterprises, Inc. v. Fireman's Fund Insurance Co.,* 535 F.2d 287, 293 (5th Cir.1976) (same where defendant "was aware of the facts underlying its alleged counterclaim for almost a year before it made its motion"); *Kirbens v. Wodis,* 295 F.2d 372, 375 (7th Cir.1961) (same where request to assert counterclaim for a setoff was made after entry of judgment for plaintiff though the defendant could have asserted the claim at least two and one-half years earlier).

■ The effect of a setoff, assuming the plaintiff establishes his own claim, is to reduce the size of the judgment entered in the plaintiff's favor. *See generally* Fed.R.Civ.P. 13(c); 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1426. In order to determine whether there should be a setoff, the district court must determine whether the setoff claim is disputed, and if it is disputed whether it is meritorious. The court cannot timely make these determinations if the claim is not asserted until after final judgment. *See, e.g., Lalime v. Desbiens,* 115 Vt. at 168, 55 A.2d 121 (setoff "is a demand which a defendant makes against the plaintiff *in the suit* " (emphasis added)).

In the present case, the District argues that neither Rule 13 nor Fed.R.Civ.P. 54(d), which governs posttrial motions for attorneys' fees, required it to assert its setoff claim during the pendency of this litigation. Indeed, it contends that it was unable to assert a setoff until after plaintiffs' fee application was granted (District's brief on appeal at 13 ("for the District's judgment to enjoy

validity as a setoff, Plaintiffs first had to establish the § 1988 entitlement itself")), and that when the fee application was filed the District had no claim to assert because the state-court judgment had not been entered:

> When Plaintiffs' Rule 54(d)(2) motion was filed, the District's state court claim was the subject of another pending action. No enforceable judgment had yet been entered against any Plaintiff and the District's claim was not yet acquired,

(District's brief on appeal at 14). Both of these arguments are frivolous.

First, the contention that "for the District's judgment to enjoy validity as a setoff, Plaintiffs first had to establish the § 1988 entitlement itself," to the extent that it is meant to be responsive to the present challenge to the timeliness of the District's assertion of setoff, is nonsense. If it were true, no defendant could assert a valid setoff in its answer, for the answer obviously is due before the plaintiff's claim is adjudicated. Rule 13 plainly requires that a setoff claim, if it is to be asserted, be asserted in a pleading during the lawsuit.

■ Second, the District's statement that the District had "not yet acquired" its claim against plaintiffs when the fee application was made, on the premise that the District's claim was not created until entry of the state-court judgment, evinces a fundamental misconception of the nature of a claim. A claim need not already have been reduced to judgment in order to be asserted as a counterclaim. "Rule 13(a) and Rule 13(b), when read together, embrace any claim a defending party may have against his opponent." 6 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1420, at 164; *see also id.* § 1401, at 11 (at common law, setoff could be based on contract). The District obviously had a contract claim against these plaintiffs that arose upon the parties' execution of the settlement agreement in which plaintiffs agreed to pay the District $200,000. That agreement was executed on or before September 30, 1994; the Rule 54(d) fee application was filed on October 21. Thus, the District had in fact acquired its contract claim against these

plaintiffs prior to the filing of the fee application.

Further, even if the District were correct that it had no claim until the state-court judgment was entered, that judgment was entered before the District filed its response to the fee application. As the District itself acknowledged to the district court, "when Plaintiffs eventually stipulated to be parties [to the state court action], and subject to the state court judgment, a counterclaim 'matured' which at the option of the District, and permission of the [district] court, could have been presented as a counterclaim by supplemental pleading." (District's Postjudgment Motion for Setoff at 12.) Thus, whether on the basis of contract or state-court judgment, the District plainly had the option of seeking to assert its setoff in its response to the Rule 54(d) application. We do not suggest either that the terms of Rule 54(d) itself require the assertion of counterclaims in response to a motion for fees or that the District's claim here was a compulsory counterclaim. But if the District wished to have its claim set off against any fee award in the present suit, it was required to assert the claim in the present suit prior to the entry of judgment, and its opposition to the Rule 54(d) application was the obvious occasion for such an assertion. Had the District informed the court at that time that it wished to set off the state-court judgment in the present action, the district court would no doubt have allowed the assertion of that claim; we would then have had the opportunity to review the court's decision as to the propriety of a setoff when the adjudication of the fee application was before us in *Valley Disposal II;* and this litigation would presumably have been concluded a year ago.

Instead, barely a week after the state-court judgment was entered, the District filed its opposition to the fee application in the district court on a variety of untenable grounds, but opted to make no mention whatever of any desire to assert a claim of setoff. Indeed, at no time did the District assert its setoff claim prior to the conclusion of the fee litigation. Although as the district court noted, the claim "could have been raised innumerous times before" final judgment (Tr. 19),

the District chose the self-help route of simply refusing to comply with the district court's judgment.

Having allowed the case to proceed to final judgment without exercising its option to seek permission to assert setoff, the District could have moved to vacate the judgment pursuant to Fed.R.Civ.P. 60(b), in order to seek permission to assert its counterclaim belatedly. But in order to prevail on such a motion, it would have been required to make a showing required by that Rule, such as mistake, inadvertence, or excusable neglect. The District has proffered no reason for its failure to make any attempt to assert setoff until some 16 months after the District concedes it could have asserted it. And the record reveals no basis on which its delay until after plaintiffs attempted to execute on the judgment entered in their favor could be found excusable.

In sum, the District was not required by Rule 13 to assert its setoff claim in this action in order to preserve its right to enforce in state court or in some other action the rights it received in the settlement agreement or the state-court judgment. But without pleading setoff prior to the entry of the final judgment in the present action, or without making some showing such as excusable neglect in support of a Rule 60(b) motion, it was not entitled to a setoff here.

## CONCLUSION

We have considered all of the District's arguments in support of its contention that it was entitled simply to refuse to pay the judgment entered against it without having raised its claim of setoff during the litigation, and have found them to be without merit. For the foregoing reasons, we reverse so much of the judgment as allows the District to satisfy its liability for attorneys' fees by setting off part of its state-court judgment. We remand for entry of a judgment in plaintiffs' favor in the amount of the $42,974.71 attorneys' fees already awarded, plus a reasonable attorneys' fee in connection with the prosecution of this appeal, *see Orchano v. Advanced Recovery, Inc.,* 107 F.3d 94, 101

(2d Cir.1997), as determined on remand by the district court.

Costs to plaintiffs.